SLIP OPINION

Cite as 2017 Ark. 64

# SUPREME COURT OF ARKANSAS

No. CR–16–365

| | |
|---|---|
| STATE OF ARKANSAS<br>APPELLANT | **Opinion Delivered** March 2, 2017 |
| V. | APPEAL FROM THE ST. FRANCIS COUNTY CIRCUIT COURT [NO. 62CR-15-71] |
| CHRISTOPHER MARTIN<br>APPELLEE | HONORABLE KATHLEEN BELL, JUDGE |
| | <u>DISMISSED</u>. |

**COURTNEY HUDSON GOODSON, Associate Justice**

The State of Arkansas appeals the "Judgment Finding the Defendant Not Guilty" entered by the St. Francis County Circuit Court after granting the directed-verdict motion of appellee Christopher Martin. For reversal, the State contends that the circuit court committed an error of law by acquitting Martin based on a finding that his arrest was illegal. The State asserts that we need not determine the legality of arrest, but rather urges us to review the remedy that was rendered. Specifically, the State argues that the dismissal of the charges levied against Martin was not the appropriate remedy flowing from the illegal arrest. Because the State cannot appeal from a judgment of acquittal, we must dismiss the appeal.

Following events that transpired on October 27, 2014, Martin was charged with numerous misdemeanor offenses, including DWI, refusal to submit to a chemical test, possession of a controlled substance (marijuana), possession of drug paraphernalia, violation of the seat-belt law, fleeing, and driving on a suspended license and without proof of

insurance. Martin appealed his convictions in district court to the Circuit Court of St. Francis County, where he stood trial before a jury on January 25, 2016.

At the trial, the prosecution presented the testimony of one witness, Arkansas State Trooper Jason Murphy. Murphy stated that at approximately 4:30 p.m. on the day in question, he was in his patrol car at an intersection when he noticed a vehicle coming toward him slowly at an estimated speed of two to three miles per hour. Murphy positioned his cruiser in a gravel parking lot so that he could watch the progress of the vehicle. To his surprise, the vehicle, driven by Martin, pulled into the gravel lot. Murphy stated that Martin drove his vehicle so closely to him that he thought Martin was going to collide with the patrol car. Murphy testified that Martin was not wearing a seat belt; that Martin glared at him as Martin drove by; and that Martin's eyes were as "red as the brake lights on a vehicle." Murphy also testified that, as Martin drove past him, the door to Martin's truck opened while the vehicle was still moving. Martin jumped out of his truck, and Murphy exited his cruiser. Murphy testified that he identified himself as a police officer and that he told Martin to stop. Martin, however, ran away. Murphy pursued him and used his taser to subdue Martin, who fell and briefly lost consciousness.

Murphy searched Martin before allowing a bystander, who was a nurse, to render aid to Martin. Murphy found in Martin's pocket a baggie of marijuana that weighed 2.4 grams. From the console of Martin's truck, Murphy seized another bag of marijuana that weighed 10.6 grams. Murphy testified that Martin had a strong odor of alcohol and marijuana about his person.

An ambulance transported Martin to a local hospital. There, Murphy advised Martin of his *Miranda* rights, as well as his rights under the implied-consent law. Initially, Martin agreed to provide a urine sample for testing, but ultimately he declined to be tested. Upon questioning by Murphy, Martin admitted that he had fled because he was impaired and in possession of marijuana. Martin also told Murphy that it was his birthday and that he had been drinking with friends.

The State rested at the conclusion of Murphy's testimony. In his motion for directed verdict, Martin argued that he was seized when Murphy tased him and that there was no probable cause for his arrest. Citing this court's decision in *Fowler v. State*, 2010 Ark. 431, 371 S.W.3d 677, Martin argued that he had been illegally arrested and that he was entitled to a directed verdict or judgment of acquittal on all charges. Martin urged the circuit court to find that the arrest and anything that follows, "from the searches, any statement, or what have you" were illegal. In response, the prosecution discussed the decision in *Fowler* and argued that probable cause existed based on Martin's slow driving, his bloodshot eyes, and because Martin was not wearing a seat belt and had come close to hitting the cruiser. The circuit court orally granted Martin's motion and then excused the jury. This timely appeal followed the circuit court's entry of a "Judgment Finding Defendant Not Guilty," in which the court stated that it had "granted defense motion for a directed verdict and rendered a verdict of NOT GUILTY to all charges."

As in any appeal brought by the State, a threshold issue is whether this is a proper State appeal. *See State v. Gray*, 2016 Ark. 411, ___ S.W.3d ___. As this court has frequently

SLIP OPINION

observed, there is a significant and inherent difference between appeals brought by criminal defendants and those brought on behalf of the State. *State v. Threadgill*, 2011 Ark. 91, 382 S.W.3d 657. The former is a matter of right, whereas the latter is not derived from either the United States or Arkansas Constitution, nor is it a matter of right, but is granted pursuant to Rule 3 of the Arkansas Rules of Appellate Procedure–Criminal. *State v. Estrada*, 2013 Ark. 89, 426 S.W.3d 405. We accept appeals by the State when our holding would be important to the correct and uniform administration of the criminal law. *State v. Brashers*, 2015 Ark. 236, 463 S.W.3d 710. As a matter of practice, this court has taken appeals only "which are narrow in scope and involve the interpretation of law." *State v. Gray*, 2016 Ark. 411, at 5, ___S.W.3d at ___.

This court does not permit State appeals merely to demonstrate the fact that the trial court erred. *State v. Sprenger*, 2016 Ark. 177, 490 S.W.3d 314. Thus, where an appeal does not present an issue of interpretation of the criminal rules with widespread ramifications, this court has held that such an appeal does not involve the correct and uniform administration of the law. *State v. Pittman*, 360 Ark. 273, 200 S.W.3d 893 (2005). Similarly, when the resolution of the issue on appeal turns on the facts unique to the case or involves a mixed question of law and fact, the appeal is not one requiring interpretation of our criminal rules with widespread ramifications, and the matter is not appealable by the State. *State v. Williams*, 348 Ark. 585, 75 S.W.3d 684 (2002).

On appeal, the State does not contest the circuit court's application of our decision in

*Fowler, supra*, to the facts of this case.[1]  Instead, the State argues that the circuit court

committed a legal error by dismissing all charges based on a finding that Martin had been

unlawfully arrested.  It insists that Martin was not entitled to the remedy of an acquittal for

an illegal arrest.  In making its argument, the State relies on our decision in *State v. Richardson*,

373 Ark. 1, 280 S.W.3d 20 (2008).  There, certain members of the West Helena City Council

voted to pay themselves and other elected officials for one year after learning that they would

not become members of the city council for the newly formed city of Helena-West Helena.

The prosecutor charged Richardson and other councilmen with theft of property.  On

motion of the defense, the circuit court dismissed the theft charges based on a defect in the

---

[1]The concurring opinion states that, "On appeal, the State contends in the jurisdictional statement of its brief to this court that the issue on appeal is 'whether the circuit court erred by acquitting [Martin] based on this court's search-and-seizure decision in *Fowler*, [2010 Ark. 431, 371 S.W.3d 677].'"  However, a review of the entire jurisdictional statement demonstrates that the State went on to provide that "[b]ecause an acquittal is not an appropriate remedy for a search-and-seizure violation, the State seeks reversal and remand for retrial or a declaration of error."  Furthermore, in its brief, the State specifically asserts that:

> Even if [Martin] was illegally arrested in light of *Fowler v. State*, 2010 Ark. 431, 371 S.W.3d 677, as the circuit court concluded, *which question the Court needs not answer here*, he was not entitled to the remedy of an acquittal of the charges against him.

(Emphasis added).

From a review of the record before us, it is clear that the State's appeal addresses only a legal remedy—not search and seizure, probable cause, or a mixed question of law and fact as the concurring opinion contends.  Accordingly, the concurring opinion addresses an issue not before the court, which we have repeatedly held this court will not do.  Because the State does not make an argument regarding the facts of Martin's case on appeal, the concurring opinion is of no moment.  Based on the record before us, the State's appeal is not proper because we do not permit an appeal from an acquittal.

SLIP OPINION

arrest warrant. The State appealed, arguing that the circuit court erred as a matter of law by dismissing the charges based on an allegedly defective arrest warrant. This court permitted the appeal under Rule 3 and held that the circuit court erred by ordering the dismissal of the charges. We said that "[a]n illegal arrest, without more, has never been viewed as either a bar to a subsequent prosecution or an absolute argument against a valid conviction." Further, this court observed that "[w]hile an invalid arrest warrant may call for the suppression of a confession or other evidence, it does not entitle a defendant to be discharged from responsibility for the offense." Based on these recitations of the law, we reversed and remanded for trial.

The State contends that this court should permit the appeal as we did in *Richardson* and hold that the circuit court erred because an illegal arrest, as a matter of law, does not warrant the dismissal of the charges against Martin. However, there is a critical distinction between the decision in *Richardson* and the present case. In *Richardson*, the circuit court granted a *pretrial* motion to dismiss. Here, the circuit court concluded the case in the middle of trial when it granted a directed verdict in Martin's favor. Thus in the case at bar, jeopardy had attached, whereas in *Richardson* it had not. *See Williams v. State*, 371 Ark. 550, 554, 268 S.W.3d 868, 871 (2007) (recognizing that "[d]ouble jeopardy attaches in a jury trial once the jury is sworn") (quoting *Phillips v. State*, 338 Ark. 209, 211, 992 S.W.2d 86, 88 (1999)).

In urging that double-jeopardy does not bar Martin from being retried, the State contends that the circuit court's dismissal was based solely on its conclusion that the arrest was illegal and not a determination that the State had failed to prove its case. It posits that the

SLIP OPINION

circuit court's decision was only a nominal acquittal because the court did not speak to the substantive elements of the offense. This question requires us to examine the basis of the circuit court's ruling in light of prevailing law.

In *Sanabria v. United States*, 437 U.S. 54 (1978), the Court observed that the most fundamental rule in the history of double-jeopardy jurisprudence is that a verdict of acquittal may not be reviewed without putting the defendant twice in jeopardy. For purposes of double-jeopardy analysis, the Court had defined an acquittal as a resolution of some or all of the factual elements of the offense charged; it is a substantive determination that the prosecution has failed to carry its burden. *Smith v. Massachusetts*, 543 U.S. 462 (2005). It is "a resolution, correct or not, of some or all of the factual elements of the offense charged." *Lee v. United States*, 432 U.S. 23, 30 n.8 (1977) (quoting *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571 (1977)). Thus, a mistaken acquittal is an acquittal nonetheless. *Evans v. Michigan*, 133 S. Ct. 1069 (2013). "When a defendant has been acquitted at trial, he may not be retried on the same offense, even if the legal rulings underlying the acquittal were erroneous." *Sanabria*, 437 U.S. at 64. Further, even though the trial court's action may have been based on an "egregiously erroneous foundation," an acquittal is final and cannot be reviewed without violating double jeopardy. *Fong Foo v. United States*, 369 U.S. 141, 143 (1962) (per curiam). As summarized by the Supreme Court,

> [A]n acquittal precludes retrial even if it is premised upon an erroneous decision to exclude evidence, *Sanabria v. United States*, 437 U.S. 54, 68–69, 78, 98 S. Ct. 2170, 57 L.Ed.2d 43 (1978); a mistaken understanding of what evidence would suffice to sustain a conviction, *Smith* [*v. Massachusetts*], 543 U.S. [462, 473], 125 S. Ct. 1129 [2005]; or a "misconstruction of the statute" defining the requirements to convict, [*Arizona v.*] *Rumsey*, 467 U.S. [203, 211], 104 S. Ct.

2305 [(1984)]; *cf. Smalis v. Pennsylvania*, 476 U.S. 140, 144–145, n. 7, 106 S. Ct. 1745, 90 L.Ed.2d 116 (1986). In all these circumstances, "the fact that the acquittal may result from erroneous evidentiary rulings or erroneous interpretations of governing legal principles affects the accuracy of that determination, but it does not alter its essential character." *United States v. Scott*, 437 U.S. 82, 98, 98 S. Ct. 2187, 57 L.Ed.2d 65 (1978) (internal quotation marks and citation omitted).

*Evans*, 133 S. Ct. at 1074.

In *Sanabria*, the trial court excluded evidence and directed a verdict based on an erroneous view of the law. The Government appealed, challenging the exclusion of the evidence and the judgment of acquittal. The First Circuit Court of Appeals likened the trial court's action to a mistrial and held that double jeopardy did not forestall the appeal because the dismissal did not constitute a ruling on criminal liability. The Supreme Court disagreed and reversed. The Court characterized the trial court's decision as an evidentiary ruling, which led to an acquittal for insufficient evidence. The Court thus held that the judgment of acquittal, however erroneous, barred further prosecution and hence also precluded review of the trial court's error.

The instant case is comparable to *Sanabria*. Martin moved for a directed verdict based on the assertion that his arrest was illegal and that the subsequent searches, his statements, and all that flowed from the illegal arrest were unlawful. The circuit court accepted this argument, granted the motion, and entered a judgment finding Martin not guilty. It is clear to us that the circuit court's ruling is best characterized as one suppressing the evidence connected with the illegal arrest, coupled with a determination that there was insufficient evidence to support the charges once the evidence was excluded. According to the above-

mentioned principles, even if erroneous, the circuit court's ruling is not subject to review, and this is not a proper appeal by the State. Consequently, we must dismiss the appeal.[2]

Dismissed.

KEMP, C.J., and WOOD and WOMACK, JJ., concur.

**JOHN DAN KEMP, Chief Justice, concurring.** The majority opinion "examine[s] the basis of the circuit court's ruling [to acquit Martin] in light of prevailing law" and proceeds to reach the merits of the State's argument. I concur with the majority's disposition to dismiss the appeal but write separately to provide a wholly different analysis. Because the circuit court's grant of Martin's motion for directed verdict turned on the application of the law to the facts, I would dismiss for lack of a proper State appeal.

Pursuant to Rule 3 of the Arkansas Rules of Appellate Procedure–Criminal, the right of appeal by the State is limited. *State v. Gray*, 2016 Ark. 411, ___ S.W.3d ___. This court has consistently held that there is a significant difference between appeals brought by criminal defendants and those brought on behalf of the State. *Id.*, ___ S.W.3d ___. The former is a matter of right, whereas the latter is neither a matter of right, nor derived from the Constitution; rather, it is only granted pursuant to the confines of Rule 3. *Id.*, ___ S.W.3d ___. We accept appeals by the State when our holding would be important to the correct and uniform administration of the criminal law. *State v. Canada*, 2016 Ark. 318, 499 S.W.3d 204. As a matter of practice, this court has only taken State appeals "which are narrow in scope and

---

[2]In recognition of Melanie Carlson's twenty-seven years of dedicated service as a judicial clerk with the Arkansas Supreme Court and with the Court of Appeals, we note that this was the final case with which she assisted.

involve the interpretation of law." *Id*. at 3, 499 S.W.3d at 206 (quoting *State v. Banks*, 322 Ark. 344, 345, 909 S.W.2d 634, 635 (1995)).

We do not permit State appeals merely to demonstrate the fact that the trial court erred. *Gray*, 2016 Ark. 411, ___ S.W.3d ___. When an appeal does not present an issue of interpretation of the criminal rules with widespread ramifications, this court has held that such an appeal does not involve the correct and uniform administration of the law. *Id*., ___ S.W.3d ___. Similarly, where the resolution of the issue on appeal turns on the facts unique to the case or involves a mixed question of law and fact, the appeal is not one requiring interpretation of our criminal rules with widespread ramifications, and the matter is not appealable by the State. *Id*., ___ S.W.3d ___.

On appeal, the State contends in the jurisdictional statement of its brief to this court that the issue on appeal is "whether the circuit court erred by acquitting [Stover] based on this court's search–and–seizure decision in *Fowler* [2010 Ark. 431, 371 S.W.3d 677]." In *Fowler*, police officers observed Fowler walking through a backyard on private property at approximately 7:25 a.m. in close proximity to a nearby high school. The police officers asked Fowler to approach. When one officer asked his name, Fowler blurted an unintelligible word and ran. An officer pursued Fowler and took him into custody. This court held that Fowler's arrest for fleeing exceeded the scope of an investigatory stop. *Id*., 371 S.W.3d 677.

The issue presented in the State's appeal does not involve an interpretation of the law but instead requires an application of the law to the particular facts and circumstances of this case. From the bench, the circuit court ruled,

It seems to me that the language of the court . . . where they implored the language where 'Fowler was arrested for fleeing'—assuming that there was in this instance, that Trooper Murphy had probable—had suspicion, sufficient suspicion to stop Mr. Martin to make that initial inquiry due to driving slowly, having the—no seatbelt on, that was sufficient reason to make the stop, to talk to him, to see what was going on.

I think the tasing does immediately move into the arrest portion of that. And the investigation that I think—that apparently Fowler is saying needs to be conducted was not carried out in this instance. And the court is going to grant [counsel's] motion, judgment for acquittal.

Subsequently, in its order, the circuit court "understood [Martin] was seeking a directed verdict," granted directed verdict in Martin's favor, and stated that

[a]fter the parties announced ready for trial, after selection of a jury, all witnesses sworn, testimony of witnesses, introduction of evidence, and the State, the cause was submitted to the Court. Whereas defense counsel sought a judgment of acquittal or dismissal, given it was a jury trial, the Court understood defense was seeking a directed verdict. After argument on said motion, the court granted [the] defense'[s] motion for a directed verdict and rendered a verdict of NOT GUILTY to all charges.

From the bench ruling and the order, the circuit court clearly based its application of *Fowler*, 2010 Ark. 431, 371 S.W.3d 677, to the unique facts and circumstances of the case before it. After weighing the evidence presented at Martin's trial and determining the credibility of Trooper Murphy, the circuit court found that the State did not prove Martin's guilt beyond a reasonable doubt and granted Martin's motion for directed verdict.

This case therefore presents a mixed question of law and fact. *See, e.g.*, *State v. Myers*, 2012 Ark. 453. Notwithstanding the State's attempt to have this court render an advisory opinion in declaring any alleged error by the circuit court, this court will not consider a State's appeal when it presents a mixed question of law and fact. *See, e.g.*, *State v. Aud*, 351 Ark. 531, 95 S.W.3d 786 (2003); *State v. Stephenson*, 330 Ark. 594, 955 S.W.2d 518 (1997). Thus,

I would hold that the State's appeal does not require an interpretation of law with widespread ramifications or the uniform administration of justice, as required by Rule 3. Accordingly, I would dismiss the appeal and would decline to reach the merits of the State's argument.

WOOD and WOMACK, JJ., join.

*Jennifer Hicky Collins* and *Morris W. Thompson*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *David Raupp*, Ass't Att'y Gen., for appellee.